IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

VICKY S. EDMONDSON                                                 PLAINTIFF

v.                    Civil No. 08-3016

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Vicky Edmondson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits (DIB), and supplemental security income ("SSI") pursuant to Titles II and XIV of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background:**

The plaintiff filed her applications for DIB and SSI on April 19, 2004, alleging an onset date of March 18, 2004, due to chronic lumbar strain, cognitive dysfunction, depression, and chronic pain. (Tr. 50-52, 81, 91, 98-110, 118). An administrative hearing was held on May 23, 2006. (Tr. 204-267). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 49 years old and possessed an eighth grade education. (Tr. 206). The record reveals that she had past relevant work experience ("PRW") as a housekeeper and hand packer. (Tr. 18, 70-77, 265-266).

On August 1, 2006, the Administrative Law Judge ("ALJ") concluded that plaintiff's chronic lumbar strain, cognitive dysfunction, depression, and chronic pain were severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 12). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform a range of light work limited by her ability to stand and/or walk for about 2 hours during an 8-hour workday and sit for 6 hours during an 8-hour workday. (Tr. 13). Further, the ALJ determined that plaintiff was limited to performing work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. With the assistance of a vocational expert, the ALJ then concluded that plaintiff could still perform work as an assembler and escort driver. (Tr. 17).

The plaintiff appealed this decision to the Appeals Council, but her request for review was denied on January 8, 2008. (Tr. 2-4). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. #7, 8).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d

964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

**Evidence Presented:**

On July 29, 2004, plaintiff underwent a general physical examination with Dr. Simon Abraham at the request of Commissioner. (Tr. 138-144). He noted that her main problem was lower back pain that radiated down both legs and feet. Plaintiff stated that she had hurt herself in a fall in March 2004. An examination revealed a reduced range of motion in the lumbar spine, but no other abnormalities. Dr. Abraham diagnosed plaintiff with lower back pain radiating

3

down the back of her legs. He then stated that plaintiff could walk, sit, stand, lift, carry, handle, finger, see, hear, and speak without limitations. (Tr. 144).

On November 4, 2004 , plaintiff was seen at Mountain Home Christian Clinic because of her lower back and hip pain, as well as depression. (Tr. 145-146). She cried during the interview, and the doctor noted that her greatest problem was depression. He diagnosed her with depression and chronic lower back pain and prescribed Celexa and Piroxicam. (Tr. 146).

On November 18, 2004, Dr. Vann Smith, a neuropsychologist, evaluated plaintiff. (Tr. 147-153). Plaintiff reported "poor" general health and degenerative disease in the cervical spine. She also complained of "brittle nails," "a feeling of having a lump in the throat," and "always feeling cold." Plaintiff indicated that she had sustained a closed head injury in a biking accident at age 6 and two additional head injuries secondary to motor vehicle accidents. Testing revealed a full scale IQ of 97. Dr. Smith noted that plaintiff was cooperative and polite, oriented in all spheres, had impaired recall memory, grossly intact judgment and insight, muted and rigid affect, and a mildly dysthymic and anxious mood. He then diagnosed plaintiff with organic brain dysfunction, cognitive dysfunction, organic affective syndrome, thyroid disease, traumatic brain injury (by history), degenerative disk disease (" DDD"), cervical spine pain, chronic pain syndrome, and assessed plaintiff with a global assessment of functioning ("GAF") of 55-60. Dr. Smith recommended that plaintiff be evaluated by an endocrinologist, rheumatologist, and psychiatrist. He also voiced his belief that plaintiff was a good candidate for structures, outpatient neurocognitive rehabilitation focusing on re-establishing attention, concentration, and recall memory using a basic sensory-motor integration format. Dr. Smith then advised a repeat neuropsychodiagnostic screening test profile after 6 to 10 months of cognitive rehabilitation to

establish a data baseline for which to accurately assess treatment efficacy and the velocity of the remaining cognitive symptoms. (Tr. 150).

Dr. Smith also completed a Mental Residual Functional Capacity Questionnaire. (Tr. 151-153, 189-193). He determined plaintiff was unable to meet competitive standards in the areas of remembering work-like procedures; maintaining attention for two hour segments; maintaining regular attendance and being punctual within customary tolerances, sustaining ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; understanding, remembering, and carrying out detailed instructions; setting realistic goals or making plans independent of others; and, dealing with the stress of semiskilled and skilled work. (Tr. 152).

On November 22, 2004, plaintiff underwent a mental status and evaluation of adaptive functioning evaluation with Dr. Nancy A. Bunting. (Tr. 154-158). Plaintiff was disheveled in appearance, insisted that her friend come into the interview room with her, and brought a can of popcorn to the evaluation. She complained of pain, which she rated as a 9-10 on a 10-point scale, and depression. Plaintiff indicated that she had lost her job in March 2004. Her current medications were Celexa and Piroxicam. Plaintiff reported a history of inpatient psychiatric treatment in the 80s after losing weight and stating that she was going to kill the abusive partner with whom she was living. However, no outpatient treatment was reported. Dr. Bunting estimated plaintiff's IQ at 71-79, which fell within the borderline range, but did not actually test the plaintiff. (Tr. 156). She noted that plaintiff was fearful, labile, and often tearful during the interview. Plaintiff was cooperative, but closed her eyes at times, and was slow to warm up. Her

5

speech was logical and organized, and she denied experiencing hallucinations, delusions, or obsessions. She rated her depression and anxiety as an 8 on a 10-point scale, and reported that her last suicidal thought was "a couple of weeks ago." However, plaintiff reported no homicidal thoughts. Her energy was low and her concentration poor. Dr. Bunting also noted plaintiff's history of closed head injuries. She diagnosed plaintiff with major depression, rule out dementia with attendant emotional liability, history of learning disabilities, chronic pain, and assessed plaintiff with a GAF of 55. (Tr. 157). Dr. Bunting also stated in her report that she did not think plaintiff could manage funds without assistance. (Tr. 158).

On March 8, 2006, plaintiff was evaluated by Dr. Ted Honghiran, an orthopedist. (Tr. 179-185). Her presentation was quiet and depressed. Plaintiff complained of "whole body pain," especially in her lower back. She had been receiving chiropractic treatment, which she felt was beneficial. However, plaintiff stated she was taking Ibuprofen for the pain and had not seen a medical doctor for her pain in the past. An examination revealed that plaintiff could walk, but walked slowly. She complained of pain when walking on her tiptoes or heels, both of which were very difficult for her. Tenderness was noted along the lumbar muscles on both sides, and a decreased range of motion was noted in her lumbar spine with pain reported. Her straight leg raise test in both legs caused no sciatic pain and there was no obvious muscle atrophy. Dr. Honghiran diagnosed plaintiff with a history of chronic arm, lower back, and body pain, most likely caused by chronic lumbar strain and depression with only a fair prognosis. He recommended that she be seen by a psychiatrist. (Tr. 179-185).

Dr. Honghiran also completed a physical RFC assessment. (Tr. 182-185). He determined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand

and/or walk at least 2 hours in an 8-hour workday; push and pull within the same parameters; occasionally balance, kneel, crouch, crawl, and stoop; and, never climb. (Tr. 182-185).

On May 16, 2006, plaintiff presented to establish care with Dr. Sarah Sullivan at the Boston Mountain Rural Health Center. (Tr. 184). She complained of severe depression and was quite tearful. Plaintiff indicated that she had previously taken Celexa, but she had discontinued the medication because it was not helpful. She also reported a history of chronic back problems, for which she had been seeing a chiropractor who told her nothing surgically could be done for her. Dr. Sullivan noted that plaintiff did walk with a cane. The doctor then indicated that her patient health questionnaire screen showed 8 and 23, consistent with a diagnosis of severe depression. (Tr. 187).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id.* As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

We note that the record does indicate that plaintiff complained of lower back pain. However, plaintiff sought treatment for her lower back pain on only two occasions during the relevant time period. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). And, there is no evidence to indicate plaintiff sought emergency treatment for her impairments. Further, in spite of the alleged severity of her pain, an orthopaedic consultation performed at the Commissioner's request revealed only a slightly limited range of motion in plaintiff's lumbar spine, but no other limitations or abnormalities. (Tr. 201-207). There was no atrophy or muscle weakness noted. In fact, at the time of the administrative hearing, plaintiff testified that she took only Ibuprofen and Celebrex for her pain. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability). Had her pain been as severe as alleged, we believe plaintiff would have sought more consistent treatment.

Likewise, there are no medical records, aside from the consultative evaluations of Drs. Smith and Bunting, to indicate that plaintiff was suffering from a severe mental impairment. (Tr.

8

230-234). *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). At the administrative hearing, plaintiff testified that she was not taking any medication to control her depression. In fact, she stated that she had received a 3 month prescription for Celexa in 2004, but stopped taking it on her own, due to side effects. However, the record contains no reports of medication side effects. Further, in 2006, plaintiff consulted with Dr. Sullivan and reported depression. However, Dr. Sullivan did not prescribe plaintiff any medication. Instead, she indicated that plaintiff needed to be seen by a psychiatrist. The record is devoid of any evidence to show that plaintiff ever consulted with a psychiatrist or psychologist as recommended. Therefore, we can not say plaintiff's mental impairment was as disabling and she contends. Clearly, had it been that limiting, plaintiff would have sought out treatment.

Plaintiff contends that she did not seek medical treatment, mental health services, or medication because she was financially unable to do so. However, the limited evidence that plaintiff sought low cost medical treatment from her doctor, clinics, or hospitals does not support her contention of financial hardship. *See Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992). Records indicate that plaintiff was seen at the Mountain Home Christian Clinic, an indigent and reduced cost clinic, on only one occasion. While plaintiff indicated that she did not return because she was certain she would be charged for her next visit, there is nothing in the record to show that she would have been turned down for indigent care. Her husband was performing work as a general contract laborer, but they qualified for some food stamp assistance. The record is also devoid of any evidence to show that she sought treatment in the emergency

room. As such, we do not find plaintiff's financial argument convincing. Had she actually returned to the clinic and been told that she could not receive treatment without paying a fee she could not afford, then she would have some support for her contention. However, simply failing to return to the clinic out of fear that she would be charged is not sufficient to establish a financial hardship.

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. On her supplemental disability interview outline, plaintiff reported the ability to care for her personal hygiene, do the laundry, wash the dishes, change the sheets, shop for groceries and clothing, go to the bank and post office, prepare meals, pay bills, use a checkbook, count change, drive familiar and unfamiliar routes, walk for exercise or errands, watch TV, listen to the radio, read, and visit friends and relatives. (Tr. 79-80, 128-135). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, these activities are somewhat inconsistent with an allegation of disability.

Therefore, although it is clear that plaintiff suffers from some degree of impairments, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or

10

discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities supports plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Next, we consider the ALJ's determination that plaintiff can perform a limited range of light exertional work with mental limitations. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

11

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, the assessment of a consultative psychologist and neuropsychologist, the opinion of a consultative orthopaedist, plaintiff's subjective complaints, and her medical records. On December 15, 2004, Dr. Jay Rankin, a non-examining, consultative doctor completed a Psychiatric Review Technique Form and a mental RFC assessment. (Tr. 159-178). After reviewing plaintiff's medical records, Dr. Rankin diagnosed plaintiff with connective dysfunction and depression. He then concluded that plaintiff had moderate limitations in the areas of carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and, setting realistic goals or making plans independently of others. (Tr. 173-174). No episodes of decompensation were noted. (Tr. 169).

The record indicates that plaintiff was suffering from moderate mental limitations. Both Drs. Smith and Bunting assessed plaintiff with a GAF in the 51-60 range, which is indicative of only moderate symptoms or some difficulty in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDER IV-TR 34 (4th ed. 2000). While Dr. Smith determined that plaintiff was unable to meet competitive standards in many areas of functioning, we can find no other evidence to support Dr. Smith's conclusions. As previously noted, plaintiff did not seek out mental health treatment, aside from the consultative examination she underwent for purposes of her application for disability benefits, and she discontinued medication prescribed for her depression without consulting her doctor. While we do believe that plaintiff was suffering from depression that rendered her moderately limited in most areas

12

of functioning, we can not say that the evidence supports plaintiff's contention of total disability.

Plaintiff contends that the ALJ erred by failing to order a consultative psychological evaluation with IQ testing. She alleges that Dr. Bunting's assessment that plaintiff's estimated IQ was 71-79, which falls within the borderline range of intellectual functioning, made it necessary for the ALJ to order IQ testing. Plaintiff argues that the ALJ is required to go with the lowest IQ score in the record. However, we note that Dr. Smith administered an IQ test to plaintiff, which revealed a full scale IQ of 97, which is average. Because Dr. Bunting did not administered an IQ test to plaintiff and merely *estimated* plaintiff's IQ to fall within that range, we do not believe that her IQ assessment carries any weight. Therefore, we find substantial evidence to support the ALJ's conclusion that plaintiff's mental limitations limited her to work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete.

We also note Dr. Honghiran's determination that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; push and pull within the same parameters; stand and/or walk at least 2 hours in an 8-hour workday; sit for 6 hours during an 8-hour workday; occasionally balance, kneel, crouch, crawl, and stoop; and, never climb. (Tr. 182-185). Because Dr. Honghiran is a orthopaedic specialist, we believe the ALJ was correct in using his assessment to determine plaintiff's RFC. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (holding that Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist). The fact that the occasional balancing, kneeling, crouching, crawling, and stooping

13

and no climbing were left out of the ALJ's RFC is not fatal because the United States Court of Appeals for the Eighth Circuit has held that a person would not need to bend and would need to stoop only occasionally to perform sedentary work. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) (person would not need to crouch and would need to stoop only occasionally to perform substantially all sedentary and light jobs); *see also* Social Sec. Rul. 83-14 (the full range of light work includes the ability to at least "occasionally" bend or stoop, but "to perform substantially all of the exertional requirements of most ... light jobs, a person would not need to crouch"). Therefore, substantial evidence supports the ALJ's assessment.

We also find that substantial evidence supports the ALJ's finding that plaintiff can perform work as an assembler and escort driver. Based on plaintiff's age, education, and RFC, the VE testified that such an individual could perform work as an assembler with 1,507 positions in the state and 105,975 positions in the national economy and an escort driver, with 1,784 jobs in the state and 137,748 in the national economy. (Tr. 17, 248-265). At the hearing, the VE testified that these jobs were classified as sedentary work by the Department of Labor Quarterly Reports. (Tr. 261). The ALJ relied on the VE testimony to find that there were a significant number of sedentary jobs available in the national economy that plaintiff could still perform. (Tr. 18). *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 12th day of August 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE